**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CONRAD HINES,
                Plaintiff,

v.                                         No. 08-CV-553
                                                (GLS/DRH)

DOCTOR GANDHAM; DOCTOR
SILVERBERG; DOCTOR POLANO; , P.A.
TED NESMITH; C.O. JOHN DOE AND
NURSE, JANE DOE, et al., sued in their
individual and capacities under the color
of law,
                Defendants.

---

**APPEARANCES:**                           **OF COUNSEL:**

CONRAD HINES
Plaintiff Pro Se
A # 042-375-283
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

HON. ANDREW M. CUOMO            SHOSHANAH V. BEWLAY, ESQ.
Attorney General for the                 Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Conrad Hines ("Hines"), formerly an inmate in the custody of the New

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

York State Department of Correctional Services (DOCS),[2] brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, four DOCS medical staff and two unidentified individuals,[3] violated his constitutional rights under the Eighth Amendment. Compl. (Docket No. 1). Presently pending is the motion of the four named defendants to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Docket No. 20. Hines opposes the motion. Docket No. 21. For the reasons which follow, it is recommended that defendants' motion be granted and that the case be terminated.

**I. Background**

The facts are related herein in the light most favorable to Hines as the non-moving party. See subsection II(A) infra.

Prior to Hines' incarceration in DOCS custody, he was incarcerated at the City of New York facility at Rikers Island where he was diagnosed with glaucoma. Compl. ¶ 7. One month after being diagnosed, Hines was transferred to DOCS' Ulster Correctional Facility where an unidentified doctor prescribed him an allergy medication which exacerbated his glaucoma. Id. ¶¶ 9-10. Hines' began experiencing persistent headaches and blurred vision. Id. ¶ 10.

In June 2003, Hines was transferred to Mt. McGregor Correctional Facility. Compl. ¶ 12. In August 2003, Hines was evaluated at DOCS' Coxsackie Regional Medical Unit ("RMU").

---

[2] Hines is presently in the custody of the Federal Bureau of Prisons ("BOP"). See Docket No. 27.

[3] The complaint names "John Doe" and "Jane Doe" as defendants. Compl. The Clerk is directed to amend the docket of this case to reflect these two individuals as defendants.

Id. ¶ 13. Hines underwent multiple eye examinations there which revealed that his headaches and vision problems were the result of taking the allergy prescription. Id. ¶ 13. On May 10, 2004, the RMU recommended that Hines see an ophthalmologist. Id. ¶ 14.

The following day, defendant Dr. Gandham evaluated Hines and explained that the pressure in Hines' right eye had risen so dramatically that an operation was required. Compl. ¶ 15. The operation would install a drainage system into Hines' eye to control the increasing pressure. Id. ¶ 16. Hines was told neither the risks of the procedure nor whether he had any other alternatives. Id. ¶ 15. In May 2003, following the operation, Hines learned that he could have undergone a laser procedure to regulate the pressure in his right eye. Id. ¶ 17. Hines' post-operative recovery went well until the area around the incision site on his eye became irritated and his vision began to deteriorate. Id. ¶ 18.

In November 2004, Hines was transferred to Green Correctional Facility's Special Housing Unit ("SHU").[4] Compl. ¶ 19. Hines complained that the dust particles in the air and the dryness inflamed his injured eye and further exacerbated his vision problems. Id. Hines was promptly taken to Albany Medical Center where Dr. Gandham prescribed him liquid gel drops for use on his eye. Id. ¶ 20.

In February 2005, while still using the liquid gel drops, Hines was transferred to Great Meadow Correctional Facility. Compl. ¶ 21. Sometime thereafter, Hines approached the medical department seeking a refill of the drops. Id. ¶ 22. Without consulting Dr. Gandham

---

[4]SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (1995). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

or Hines' medical record, defendant Nesmith, a physician's assistant, informed Hines that he did not need the drops, denied his refill of the prior prescription, and instead gave him tear drops. Id. ¶¶ 23-24. Hines reluctantly used the tear drops and experiencing increased pain, dryness, and blurry vision. Id. ¶ 25. Hines began lodging complaints with the medical department. Id. ¶ 27.

On September 15, 2005, Dr. Gandham evaluated Hines, noting that his eye was slightly red. Compl. ¶ 28. Hines complained of intense pain and constant throbbing in his eye and requested that Dr. Gandham communicate to the staff at Great Meadow the importance of providing Hines with liquid gel drops. Id. ¶¶ 28-29, 32. Dr. Gandham indicated that he would prescribe the liquid eye drops, but could not compel Great Meadow to provide them to Hines. Id. ¶ 32. Dr. Gandham performed multiple tests on Hines, using various eye drops to identify any damage and measure the pressure in Hines' eyes. Id. ¶ 33-34. The drops caused Hines intense pain. Id.

The following morning, Hines' eye was throbbing and he was in intense pain. Compl. ¶ 35. The pain began the prior day when Dr. Gandham inserted the various drops in Hines' eyes and had now spread to his right eye. Id. By the following day, the area surrounding the incision site in the right eye was completely yellow and Hines' eyes were extremely bloodshot. Id. ¶ 36. Hines asked an unidentified officer to allow Hines to visit the clinic, but Hines never saw a physician. Id. ¶ 37.

On September 18, 2005, the pain in Hines' right eye was unbearable. Compl. ¶ 39. He saw fluids moving in his field of vision, his eyesight was blurry, and there was a discharge from the corner of his right eye. Id. Other inmates encouraged Hines to seek medical attention for his eye. Id. ¶ 40; Romero Aff. (Docket No. 1) at 34; Boone Aff. (Docket No. 1)

4

at 35; Reyes Aff. (Docket No. 1) at 36. Hines again communicated to the unidentified officer that he required medical attention, The officer called the medical clinic, and a nurse at the clinic informed him that Hines did not need to see a physician because he was only suffering from conjunctivitis, or pink eye. Compl. ¶¶ 42-44. Hines complained to the officer that the nurse had failed to examine him. Hines was instructed to request an examination in writing. Id. ¶ 45-46.

The following day, Hines was in extreme pain and still suffering from a headache. Compl. ¶ 47. He was not examined. Id. Later in the day, on the way to the mess hall, Hines showed an unidentified sergeant his injured eye, which eventually led to the provision of an emergency medical pass. Id. ¶¶ 47-48. Upon arriving at the clinic, an unidentifed nurse again told Hines that he had pink eye, without physically examining him or consulting his medical records. Id. ¶ 50. The nurse's diagnosis was confirmed a few minutes later by Nesmith, who assessed Hines' condition without examination. Id. ¶¶ 52, 54-55. Nesmith prescribed Hines eye drops and assured him that he had experience with pink eye and that Hines did not require an evaluation by a specialist. Id. ¶ 55. Immediately after applying the prescription eye drops, Hines experienced sharp, painful stinging in his right eye. Id. ¶ 57. Hines' headache had intensified to the point that he was unable to focus through his right eye. Id. ¶ 58. Additionally, he no longer saw any fluid in his field of vision and a yellow substance was oozing from the corners of his eye. Id.

The following day, Hines could not sleep and was in extreme pain. Compl. ¶ 59. He went to his work assignment and told his supervisor that (1) the medical department diagnosed him with pink eye, (2) he was in extreme pain, and (3) he was unable to see. Id. The supervisor called the medical clinic, informing Hines that he had an appointment for

that morning. Id. ¶ 60. Shortly thereafter, Hines went to sick call and saw Nesmith. Id. ¶ 61. Hines complained of excruciating pain and a constant decline in his vision which had resulted in total blindness in his right eye. Id. ¶¶ 61-62. Hines was given a pain reliever and told to continue using the medication as, despite Hines' reported side effects, the prescription was working properly. Id. ¶ 62.

On September 21, 2005, Hines went unseen by medical staff and wrote to the Superintendent describing his condition and pain. Compl. ¶ 63. The following day, Hines again reported to work. Id. ¶ 64. Hines' eye was swollen, bloodshot, and yellow. Id.; Romero Aff. at 34; Boone Aff. at 35; Toms Aff. at 37. The supervisor again attempted to call the clinic to arrange for Hines to see a doctor but was unsuccessful. Compl. ¶ 64. However, that same day Hines saw Nesmith again. Id. ¶ 65. Hines told him that he was suffering significant pain in his eye and head, he needed to see a doctor immediately, and he could not see out of his right eye. Id. Hines was given a medical pass for the following day. Id.

On September 23, 2005, all medical examinations were cancelled. Compl. ¶ 67. Later that day, another inmate noticed Hines' eye and called a nurse. Id. ¶ 68; Docket No. 1 at 30; see also Romero Aff. at 34; Boone Aff. at 35. A nurse arranged for Hines to be evaluated immediately by Dr. Silverberg, a defendant herein, who opined that Hines could have an infection related to his glaucoma. Compl. ¶ 70-74. He recommended that Hines contact Dr. Gandham as there was nothing that Dr. Silverberg could do to assist Hines. Id. ¶¶ 70-74.

Later that day, Hines saw defendant Dr. Polano, a defendant herein, who immediately sent Hines to the hospital. Id. ¶ 76. Hines was subsequently evaluated by Dr. Gandham

6

who diagnosed Hines with an untreated, rampant eye infection which was spreading and would leave him blind. Id. ¶ 77, 79. Hines underwent a draining procedure, received antibiotics, and was told that the infection and delay in treatment had broken down Hines' retina. Id. ¶ 81-82. Hines was also informed by a medical intern that had the infection been treated earlier, the damage to his sight would have been minimal. Id. ¶¶ 85. Currently, Hines suffers from inter alia black, floating spots in his left eye, constant pain and headaches, fatigue in his left eye, blurry vision, white flashes, loss of peripheral vision, and total blindness in his right eye. Id. ¶ 84. Hines also claims that his right eye will eventually rot and require removal. Id. ¶ 89. This action followed.[5]

## II. Discussion

Hines contends that defendants were deliberately indifferent to his serious medical condition. Defendants argue that (1) certain claims are barred by the statute of limitations, (2) the Eighth Amendment claims have no merit, (3) Hines has failed to allege the personal involvement of defendant Polano, and (4) defendants are entitled to qualified immunity. In the alternative, defendants argue that the Younger abstention doctrine precludes review.

### A. Legal Standard

"The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is substantively identical to the 12(b)(6) standard, except that the plaintiff has the burden of

---

[5] On October 19, 2005, Hines successfully grieved his complaints surrounding the medical care he received from September 17 until September 25, 2005. Docket No. 1 at 39-43.

establishing jurisdiction in a 12(b)(1) motion." S & R Dev. Estates, LLC v. Bass, No. 07-CV-11112 (WCC), 2008 WL 4525777, at *8 (S.D.N.Y. Sept. 26, 2008); see also Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003). Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). Dismissal is only warranted if it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of his or her claim which would be entitled to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Younger Abstention

Hines has previously commenced three other actions in New York State courts arising from the same allegations contained in his complaint in this case. On or about October 24, 2004, Hines filed a claim in the New York Court of Claims, in alleging that the State of New

York was liable to him in damages for malpractice in the treatment of his right eye resulting in blindness in that eye. See Hines v. State of New York, Claim No. 110014, Decision and Order filed June 27, 2005 (Docket No. 20-4).  That claim was dismissed for failure to timely serve or file it. See id.  On or about November 16, 2006, Hines filed a second claim in the New York Court of Claims again alleging that the State of New York was liable in damages for malpractice in the treatment of his right eye resulting in blindness in that eye and compromised vision in his left eye. See Hinds a.k.a. Hines v. State of New York, Claim No. 113024, Verified Compl. filed Nov. 16, 2006 (Docket No. 20-4). This claim remains pending.  Finally, on May 5, 2008, Hines filed an action in the New York Supreme Court for Kings County alleging that Dr. Gandham, Dr. Silverberg, and various John Doe defendants were liable in damages for malpractice in the treatment of his right eye resulting in blindness in that eye and in compromised vision in his left eye. See Hines v. Gandham, Index No. 4302/08, Supplemental Summons & Am. Compl., verified on May 5, 2008, ¶¶ 4-5, 8, 13, 20 (Docket No. 20-4). This state court action also remains pending.  See id.

   Defendants contend that this Court should abstain from deciding this action in light of the two pending cases.  Under Younger v. Harris, 401 U.S. 37 (1971), and its progeny, a federal court may abstain from deciding the constitutional clams asserted by a plaintiff if the plaintiff has an opportunity to raise and have timely decided by a competent state tribunal those constitutional claims.  See Kaufman v. Kaye, 466 F.3d 83, 87 (2d Cir. 2006). Generally, federal courts are required to hear cases which fall within their jurisdiction and refusals to hear such matters on abstention principles are the exception and not the rule. See Canny v. Ray, No. 91-CV-773, 1991 WL 268692, at *2 (N.D.N.Y. Dec. 11, 1991). However, under the Younger doctrine, "federal courts, in the interest of comity [and

9

federalism], must abstain from enjoining pending state court [claims] and allow state courts to resolve pending matters within their jurisdiction." Manculich v. Bucci, No. 05-CV-1441, 2006 WL 1085174, at *2 (N.D.N.Y. Apr. 25, 2006) (quoting Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004)); see also Trainor v. Hernandez, 431 U.S. 434, 443-44 (1977) (extending the Younger abstention doctrine to all federal judicial processes whether criminal, quasi-criminal, or civil); Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (explaining the doctrine as respectful of a state sovereign's judicial ability and consistent with "the notion that . . . a state proceeding provides an adequate forum for the vindication of federal constitutional rights.").

Generally, dismissal on grounds of abstention is appropriate where a federal court is asked to intervene or otherwise interfere with state court proceedings. See, e.g., Spargo v. New York State Com'n on Judical Conduct, 351 F.3d 65, 75 (2d Cir. 2003) (dismissing case on abstention grounds where judicial officer sought to enjoin state disciplinary investigation and proceedings); Finnan v. Ryan, No. 8:08-CV-259 (GLS/RFT), 2008 WL 4891162, at *4 (N.D.N.Y. Nov. 7, 2008 (Sharpe, J.); McCulley v. N.Y.S. Dep't of Enventl. Conservatin, No. 8:05-CV-0811 (LEK/DRH), 2006 WL 6177175, at *5 (N.D.N.Y. May 17, 2006) (Kahn, J.) (granting dismissal on abstention grounds where plaintiff sought to enjoin state agency administrative and criminal proceedings); see also Schwartz v. Dennison, 518 F. Supp. 2d 550, 568 n.7 (S.D.N.Y. 2007) (denying abstention where state court proceedings had terminated and the federal case would not, therefore, interfere); Campos v. Coughloin, 854 F. Supp. 194, 203 n.6 (S.D.N.Y. 1994) (Sotomayor, J.) (declining abstention in deference to DOCS grievance proceedings).

The existence of parallel state actions raising similar claims is not uncommon. Without

a showing that litigation of the federal action would somehow interfere with a state proceeding, however, insufficient basis exists to warrant dismissal on abstention grounds. Defendants have made no showing here that the litigation of Hines' claims here would interfere with either of the two pending parallel state court actions. Absent such a showing, Hines is entitled at this stage to proceed with the litigation of his claims.

Accordingly, defendants' motion to dismiss on this ground should be denied.

### C. Eighth Amendment

Hines' principal claims arise under the Eighth Amendment. The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This provision encompasses the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

11

### 1. Serious Medical Need

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

In this case, the loss of vision in Hines' right eye constituted a serious medical need. See Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (holding that visual impairments such as double vision and the loss of depth perception constitute a serious medical need); Alwood v. Montgomery, No. 07-CV-373 (WL), 2007 WL 4335462, at *2 (N.D. Ind. Dec. 7, 2007) (holding that blindness from glaucoma constitutes a serious medical need); Trahan v. Reinkens, No. H-05-173, 2007 WL 2142075, at *3 (S.D. Tex. July 25, 2007) ("[L]oss of vision in one eye constitutes a serious medical need."). Any additional impairment which Hines suffered to his left eye as a result of the infection in his right eye are also sufficiently serious as a reasonable person would deem blurred vision, pain, headaches, and flashes of light worthy of examination and treatment. Brock, 315 F.3d at 162-63.

## 2. Deliberate Indifference

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

### a. Dr. Gandham

Dr. Gandham initially evaluated Hines in May 2004 and subsequently performed surgery on Hines' eye to relieve the pressure which had been accumulating due to his glaucoma. Compl. ¶ 15. The operation was successful and Hines did not have any additional trouble with the eye until November 2004. Id. ¶¶ 18-19. When Hines saw Dr. Gandham in November, he prescribed Hines liquid gel eye drops which appeared to alleviate his pain and discomfort. Id. ¶ 20. The undisputed facts that Dr, Gandham promptly evaluated Hines and prescribed eye drops compels only the conclusion that in this period Dr. Gandham was neither delaying nor acting indifferently to Hines' medical complaints.

13

Hines next saw Dr. Gandham in September 2005 after Hines' transfer to Great Meadow. Compl. ¶¶ 28-32. Hines expressed his disagreement with his eye drop prescription, to which Dr. Gandham replied that he had no control over what drops Great Meadow ultimately provided Hines. Id. ¶¶ 28-29, 32. Dr. Gandham promised to speak to the medical staff at Great Meadow, performed a barrage of tests on Hines, and ultimately concluded that Hines' eye was slightly red. Id. ¶¶ 32-34. The numerous tests are undisputed and refute Hines' conclusory allegations that Dr. Gandham was deliberately indifferent in this period. Additionally, any resulting pain and discomfort Hines experienced because of the drops is neither alleged nor indicated to be a result of Dr. Gandham's deliberate and malicious will. At best, the course of treatment would demonstrate a negligent misdiagnosis. In either event, no Eighth Amendment claim is stated. See, e.g., Burgess v. County of Rensselaer, No. 03-CV-652 (NPM/RFT), 2006 WL 3729750, at *8 (N.D.N.Y. Dec. 18, 2006) (holding that "claim[s] of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, [are] not cognizable under section 1983.") (citations omitted).

The next time Hines saw Dr. Gandham was two weeks later when Dr. Gandham diagnosed him with a rampant eye infection which Dr. Gandham successfully treated. Compl. ¶¶ 76-79. While the ultimate result was unfortunate, his allegations are insufficient to demonstrate deliberate indifference since each time Hines saw Dr. Gandham, he was evaluated and treated, with surgery or prescriptions. All actions, even when considering the ultimate results, represent at worst negligent misdiagnosis and treatment. No facts are alleged which would support a finding of intentional or reckless behavior by Dr. Gandham. Even viewing the allegations of the complaint in the light most favorable to Hines, while the

results were unfortunate, the facts alleged by Hines will not suffice to sustain an Eighth Amendment claim as to this treatment.

Accordingly, defendants' motion as to Dr. Gandham should be granted.

### b. Nesmith

Defendant Nesmith initially evaluated Hines upon Hines' arrival at Great Meadow. Their first interaction resulted in Nesmith changing Hines' eye drops. Coml. ¶¶ 23-24. While Hines disagreed with this course of action, mere disagreement with the course of treatment or medication is insufficient to sustain an Eighth Amendment claim. See, e.g., Chance, 143 F.3d at 703.

Nesmith next saw Hines on September 19 and 20, 2005. During those visits, Nesmith saw Hines' injured eye when Hines arrived at the medical clinic, offered a confirmatory diagnosis of pink eye based on Nesmith's experience treating pink eye, and prescribed antibiotic eye drops to resolve the condition. Compl. ¶¶ 54-55. When Hines returned complaining of continued pain, Nesmith gave him pain medication in addition to the antibiotic drops and directed Hines to continue with the course of treatment as pain commonly indicated the efficacy of the medication. Id. ¶¶ 61-62. These undisputed facts compel the conclusion that Nesmith promptly responded to Hines' medical condition, treating it as he perceived appropriate based on his experience. While Nesmith misdiagnosed Hines' condition leading to ineffective treatment, this at most constitutes negligence. Hines alleges no facts which would support a finding that Nesmith's conduct was intentional or reckless as required for Eighth Amendment liability.

Accordingly, defendants' motion as to Nesmith should also be granted.

### c. Drs. Silverberg and Polano

According to the complaint, Dr. Silverberg's only involvement was to evaluate Hines on a single occasion, opining that Hines might have an infection in his right eye, and recommending that Hines see Dr. Gandham for further treatment. Compl. ¶¶ 70-74. According to the complaint, the record indicates recommendations were heeded immediately as Hines saw another physician the same afternoon and was admitted to a hospital later that same day. Id. ¶¶ 76, 77, 79. According to the complaint, Dr. Polano's only involvement was to evaluate Hines after Dr. Silverberg, recommending that Hines be sent immediately to the hospital. Id. ¶ 76. Despite Hines' contentions that Drs. Silverberg and Polano should have done something more than recommend referral to a specialist, such disagreement over treatment fails to state a cognizable claim.

The undisputed facts demonstrate that both Drs. Silverberg and Polano examined Hines and referred him for further treatment immediately. The complaint is devoid of facts from which any conclusion could be drawn that either defendant intentionally or recklessly treated Hines. Accordingly, defendants' motion should be granted on this ground as to both defendants.

### G. Qualified Immunity

Finally, defendants claim that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov.

10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning any of Hines' claims because, for the reasons discussed above, Hines has failed to state a claim as to the first prong of the inquiry.

Accordingly, in the alternative, defendants' motion on this ground should be granted.[6]

### III. "John Doe" and Jane Doe"

As noted supra, the complaint also names as defendants "John Doe" and "Jane Doe." See note 3 supra. those defendants have not been otherwise identified and, of course, have not appeared in the action. They were not, therefore, included in defendants' motion

---

[6] As discussed supra, defendants' motion should be granted on the merits of Hines' claims and on the ground of qualified immunity. Defendants assert additional arguments in support of their motion concerning the statute of limitations and entitlement to a protective order need not be addressed herein but may be considered if the district court declines to adopt the recommendations herein.

here. Viewing the allegations of the complaint in the light most favorable to Hines, the allegations against "John Doe" and "Jane Doe" fail to assert facts from which one could reasonably conclude that either defendant acted intentionally or recklessly in their conduct toward Hines. Therefore, in the interests of judicial economy, it is further recommended that the complaint be dismissed as to defendants "John Doe" and "Jane Doe" for failure to state a claim upon which relief could be granted.

### IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

    1. Defendants motion to dismiss (Docket No. 20) be **GRANTED** as to all named defendants and that the complaint be **DISMISSED** as to all such defendants;

    2. The complaint be **DISMISSED** as to defendants "John Doe" and "Jane Doe;" and

    3. The case be **TERMINATED** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 10, 2009
       Albany, New York

*David R. Homer*
United States Magistrate Judge